**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LENZ COMPANY, Respondent.**

**No. 17882.**

United States Court of Appeals Sixth Circuit.

June 21, 1968.

---

14. See note 6, *supra.*

15. See note 8, *supra.*

Burton L. Raimi, N.L.R.B., Washington, D. C., for petitioner; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Glen M. Bendixsen, Fred R. Kimmel, Attys., N.L.R.B., Washingon, D. C., on the brief.

Dean E. Denlinger, Dayton, Ohio, for respondent; Lee M. Modjeska, Smith & Schnacke, Dayton, Ohio, on the brief.

Before PHILLIPS, CELEBREZZE and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This cause is before the court on the petition of the National Labor Relations Board for enforcement of its order of July 13, 1965, 153 N.L.R.B. 1399, which found the Company guilty of violating Section 8(a) (1) of the National Labor Relations Act (29 U.S.C. § 151 et seq.) by informing four employees that they were being laid off because of a letter the Company received from the Union; of violating Section 8(a) (3) and (1) of the Act by laying off said four employees to discourage membership in the Union; and of violating Section 8(a) (5) and (1) of the Act by refusing to bargain with the Union.

On May 12, 1964, the Company's president and general manager, Mr. Lenz, was told by an employee that the "new men" were after him about the union. The Company admits that the layoffs of three employees on May 12, and of a fourth on May 13, (all four of whom had been with the Company approximately one month) were accelerated upon the advent of the Union and were therefore unlawful under Section 8(a) (3) and (1).

The Board, in agreement with the Trial Examiner, also found that when supervisor Yantis informed the four employees that they were being laid off, he told them there "had been a big blow up because of a letter received from the Union." Yantis' denial of having made any such statement is buttressed by the fact, as found by the Board, that the Company did not receive the certified letter sent it by the Union on May 12, but received only a notice from the Post Office (which did not identify the sender) advising that an attempt had been made to deliver the letter, and that it had been returned to the Post Office. However, we believe that substantial evidence, consisting of the credited testimony of several of the employees involved, supports the Board's determination. 29 U.S.C. § 160(e). Accordingly, the Board's order relating to the charges arising from the Company's dealings with the four employees who were laid off should be enforced.

The Company contends that the discharge of employee Johnson on May 13, was for cause and not because of his participation in union activities as charged in the complaint. The Trial Examiner found for the Company on this issue, and the Board, by a 2–1 vote, reversed.

The record fully supports the Trial Examiner's finding that Johnson "was neither a model employee, a hard-working employee nor a particularly skillful employee." Johnson had been warned and reprimanded on numerous occasions during his two year employment with the Company for such misconduct as giving a ride to another employee on a power crane, stopping work to talk, and for instigating a heated argument—or fight—with another coworker. Approximately one month before his discharge, Johnson engaged in what the Company representatives testified was a deliberate slowdown on a rush job, with corroboration in Johnson's admission that "I guess

I was taking my time. * * *" On the day of his discharge, Lenz saw Johnson throw a rag at a fellow employee about five tables away. When Lenz reported this incident to Yantis, the latter then for the first time told Lenz of the crane incident. Lenz immediately directed that Johnson be discharged.

The Board found that the Company had "knowledge or suspicion of Johnson's participation in the union activities and discharged him for that reason." In reaching this conclusion, the Board considered such factors as the Company's "general knowledge" of union activities in the plant, the timing of the discharge and the "relatively minor" incident relied upon as a basis for the discharge. After reviewing the record in this case, we find the Trial Examiner, who specifically credited Lenz' testimony concerning the rag throwing incident, properly rejected the conclusion reached by a majority of the Board as resting "more on speculation than on reasonable inference." It is here determined that substantial evidence does not support the Board's determination as to the cause of Johnson's discharge and enforcement is denied as to that portion of the Board's order requiring reinstatement of Johnson with back pay.

To support its finding of Section 8(a) (5) and (1) violations, and the corresponding portion of its order requiring the Company to bargain with the Union, the Board concluded that the Union had validly been designated the exclusive bargaining representative of the 26 employees in the bargaining unit upon obtaining 14 signed authorization cards.[1] The Company resists the Board's bargaining order on the grounds that the authorization cards used were deceptive and ambiguous on their face, and because statements made to the employees by the solicitors were misleading.

The dual purpose cards signed by the employees in this case, which lack the quality of clarity of stated purpose, are

[1]. In light of our determination that Johnson was discharged for cause prior to the Union's request for recognition, the Union is deemed to have obtained 13 cards in a 25 member unit.

of two types. Ten of the cards are captioned "PETITION AND AUTHORIZATION FOR N.L.R.B. ELECTION" printed in large, boldfaced type. Beneath this are four lines which recite that the undersigned authorizes the Union to petition the Board for an election "as soon as possible" so that he "may become a part of the Professional, Technical and Salaried Conference Board." Two subsequent lines above the spaces for the employee's name, address and signature, authorize the Union to act as the employee's bargaining agent. The remaining cards used are captioned:

"Petition and Authorization to Show That

"I WANT AN N.L.R.B. ELECTION NOW"

As with the first group of cards, the first four lines authorize the Union to petition the Board for an election "as soon as possible," and the following two lines authorize the Union to act as the employee's bargaining agent.

The Trial Examiner found that the cards partook of the "fine print" clauses encountered in some business contracts because of the "stated primary purpose" of the cards set forth at the top and in bold type. For this reason, and because the non-salaried employees involved had no intention of joining a "Professional, Technical and Salaried Conference Board" as some of the cards erroneously stated, the Examiner rejected the authorization cards as a basis for a bargaining order.

Both courts [2] and commentators [3] have expressed concern over the use of cards similar to those used here as a basis for establishing a union's majority status. As noted by Judge Friendly in N.L.R.B.

v. Nichols Co., 380 F.2d 438 (2nd Cir. 1967), in which reference was made to the Board's decision in the present case, the cards under consideration are "deceptive and ambiguous." Despite our view that there can be little justification for reliance on such cards for any purpose other than conducting an election, we need not reach the issue resolved differently by both the Trial Examiner and the Board of whether the cards are invalid on their face.

Contrary to the Board's assertion, there is evidence in the record that the cards were obtained from employees by conduct which renders them invalid. There is ample evidence that the card solicitors represented to a number of employees only that the cards would be used to secure an election. This court has recently stated:

"To validate such [dual purpose] cards, the representations made to employees should reflect their dual purpose of securing representation with or without an election." Dayco Corp. v. N.L.R.B., 382 F.2d 577, 582 (6th Cir. 1967).

See also N.L.R.B. v. Swan Super Cleaners, Inc., 384 F.2d 609 (6th Cir. 1967); N.L.R.B. v. Shelby Mfg. Co., 390 F.2d 595 (6th Cir. 1968), and cases cited therein. In accordance with the foregoing, it is here determined that one or more of the cards is invalid, thus destroying the Union's claimed majority. Accordingly, enforcement of the Board's bargaining order is denied.

With reference to the Section 8(a) (1) and (3) violations involving employees Pugh, Gambrell, Thacker and Walters, enforcement of the Board's order will be granted. In all other respects, enforcement is denied.

2. N.L.R.B. v. Nichols Co., 380 F.2d 438 (2d Cir. 1967); International Union of Elec., Radio and Machine Workers, AFL-CIO v. N.L.R.B., 122 U.S.App.D.C. 145, 352 F.2d 361 (Concurring opinion of Judge Burger), cert. denied, 382 U.S. 902, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965).

3. Lesnick, Establishment of Bargaining Rights Without an N.L.R.B. Election, 65 Mich.L.Rev. 851, 856–57 (1967); Note, Union Authorization Cards, 75 Yale L.J. 805, 823–28 (1966); Note, Refusal-To-Recognize Charges Under Section 8(a) (5) of the NLRA: Card Checks and Employee Free Choice, 33 U.Chi.L.Rev. 387, 392–97 (1966).